FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
APR 2 5 2019
D. MARK JONES, CLERK
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
District of Utah

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

IN THE MATTER OF THE SEARCH OF BLACK AND SILVER iPHONE (EXHIBIT N-5) CURRENTLY LOCATED AT 348 EAST SOUTH TEMPLE, SLC, UT

Case No. 2:19mj298-DBP

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A, incorporated herein by reference.

located in the _____ District of _____ Utah _____, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g)(1) | Felon in Possession of Firearms |

The application is based on these facts:
See Affidavit in Support of an Application for a Search Warrant, incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Darrell Dain, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/25/2019

_____
*Judge's signature*

City and state: Salt Lake City, Utah

DUSTIN B. PEAD, U.S. Magistrate Judge
*Printed name and title*

JOHN W. HUBER, United States Attorney (#7226)
ISAAC C. WORKMAN, Assistant United States Attorney (#14031)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Facsimile: (801) 524-6925
E-mail: isaac.workman@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **BLACK AND SILVER iPHONE (EXHIBIT N-5) CURRENTLY LOCATED AT 348 EAST SOUTH TEMPLE, SALT LAKE CITY, UTAH** | Case No. 2:19mj298-DBP |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, **Darrell Dain**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a sworn law enforcement officer for the West Valley City, Utah, Police Department, and have been so for over 20 years. I have been assigned to the Drug Enforcement Administration (DEA) Metro Narcotics Taskforce, Denver Division, Salt Lake City District Office, Utah, as a DEA Task Force Officer (TFO) since July 2011. During that same time, I was deputized as a TFO pursuant to the authority granted to the Attorney General by Public Law 99-570, Section 1869, and delegated to the Administrator of the DEA, pursuant to Title 28, Code of

Federal Regulations, subpart R, Section 0.100, et. seq. I have received training related to homicide, missing persons, domestic violence, sex crimes, property offenses, narcotics trafficking, and general crime scene investigations. I have personally been the case agent and investigated Drug Trafficking Organizations (DTO) related to large scale interstate drug related crimes. I have also received training in computer investigations relating to violent and non-violent drug-related crimes. I have served as an undercover narcotics officer investigating drug and weapon crimes in the United States, and I have served on a numerous federal narcotics task forces performing undercover operations in relation to illicit narcotic activity and weapons violations within the United States. Additionally, I served in a specialized law enforcement gang unit enforcing gang, weapon, and drug statutes, and I also served as a SWAT officer. I have received detailed and extensive training to perform the above-described duties from the DEA, Federal Bureau of Investigation (FBI), Public Agency Training Council, Los Angeles Police Department, Bureau of Alcohol, Tobacco, Firearms and Explosives, California Narcotic Officer Association, California Department of Justice – Bureau of Narcotic Enforcement, Clandestine Lab Investigators Association, High Intensity Drug Trafficking Area, High Tech Crime Institute, ISS World Telestrategies, Cellbrite, and H-11 forensics. Your Affiant is a certified physical and logical Cellbrite forensic operator and analyst.

3. This affidavit is intended to show only that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a **BLACK AND SILVER iPHONE (EXHIBIT N-5)**, hereinafter referred to as the "Device." The Device is currently located at 348 East South Temple, Salt Lake City, Utah.

5. The DEA utilizes a unique evidence numbering system where the "N" indicator denotes a "non-drug" piece of evidence, with the corresponding number signifying the particular piece of non-drug evidence. The device was seized under DEA case number ML-19-0031 as Exhibit N-5. No two items can have the same case number and non-drug exhibit number.

6. The applied-for warrant would authorize the forensic examination of the "Device" for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

7. On April 8, 2019 agents from the Drug Enforcement Administration, Salt Lake Metro Narcotics Task Force, received information from a Greyhound bus employee that an individual and his luggage, scheduled to depart, smelled strongly of marijuana.

8. At approximately 0730 hours DEA Task Force Officer (TFO) B. Davis, Salt Lake City police officers B. Evans and D. Perry arrived and contacted Richard Floyd, the passenger and owner of the luggage.

9. Floyd indicated that he did not have any drugs, but he had recently smoked marijuana before entering the terminal. Additionally, Floyd consented to agents searching his luggage.

10. During the search TFO Davis located a clear plastic box with 50 rounds of pistol ammunition. Officer Evans asked Floyd if he had any guns on him, and Floyd replied no. Officer Evans asked Floyd if he could check him for weapons, and Floyd stepped forward and turned to be checked. Officer Evans asked again if Floyd had on him, and this time Floyd stated that he did on his right hip. Officer Evans located a loaded .40 caliber Ruger pistol on Floyd's hip.

11. During this encounter and subsequent arrest, agents located a total of five handguns and corresponding ammunition. Floyd advised agents that he likes guns and shooting them, and he was returning to his home in Chicago, Illinois.

12. Floyd stated that the pistol on his person he purchased approximately 1.5 years ago, in Chicago, from an unknown male on the street. Floyd purchased the .45 Springfield XD from "Jacob" who lives in Logan, Utah but conducted the sale at his parent's house in Brigham City, Utah for $580 (This weapon was confirmed stolen, Brigham City police report #17-B05487.). Floyd purchased the M&P .40 from someone named Tom in Salt Lake City, Utah. Floyd purchased the Glock 21 from someone in Layton, Utah. Floyd purchased the other M&P .40 from "Lester" in Sandy, Utah.

13. After Floyd's arrest, and subsequent to Miranda, Floyd allowed agents to examine his cellular device, including providing them with the access code. Agents observed through messaging applications Floyd's negotiations to purchase the indicated firearms. TFO Davis observed, names, dates, locations, purchase amounts, and internet access to Utah Gun Exchange, an internet website dedicated to the private purchase of firearms.

14. Agents were unable to positively identify Floyd by the name "Richard Floyd." Special Agent (SA) C. Smilie of the FBI responded with a fingerprint reader which was able to identify Floyd as "David Floyd." Agents confirmed Floyd to be a convicted felon, having been convicted in Cook County, Illinois in 2013 of Armed Violence/Aggravated use of a Weapon/Vehicle.

15. As described in the previous paragraphs, Floyd utilized his cellular device to facilitate travel from Chicago, Illinois to Salt Lake City, Utah with the desire to illegally purchase firearms for transportation back to Chicago, Illinois. Your affiant knows through

training and experience that the "Device" can contain valuable evidence related to GPS locations recorded between Illinois and Utah, communications through messaging application related to the illegal purchase of firearms, and internet searches related to illegally purchasing firearms. Additionally, it is you affiants training and experience that those involved in the illegal trafficking of firearms will commonly record by photo or video, and they will communicate by various messenger applications those photos or videos of desired firearms to prospective sellers and vice/versa. Although deleted by a user, electronic evidence can remain on these devices for life and can be extracted by forensic examination.

16. The Device is currently in storage at 348 East South Temple, Salt Lake City, Utah. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the DEA.

## **TECHNICAL TERMS**

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. The "Device" (Wireless telephone): A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include:

storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos. The "Device" indicated in this affidavit contain digital cameras.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite

contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at

www.phonescoop.com, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, internet computer, and GPS navigation device. Additionally, in my training and experience, examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the "Devices" described in Attachment A to seek the items described in Attachment B.

RESPECTFULLY SUBMITTED this 25 day of APRIL 2019.

DARRELL DAIN
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me this 25th day of APRIL 2019.

DUSTIN B. PEAD
United States Magistrate Judge

## ATTACHMENT A

## THE DEVICES TO BE SEARCHED

The property to be searched is a **BLACK AND SILVER iPHONE (EXHIBIT N-5)**, hereinafter referred to as the "Device." The Device is currently located at 348 East South Temple, Salt Lake City, Utah.

This warrant authorizes the forensic examination of the "Device" for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## THE INFORMATION TO BE SEIZED

1. All records on the Device described in Attachment A that relate to violations of Title 18 U.S.C. Sec. 922(g)1, Unlawful Possession of a Firearm, and involve David Floyd (AKA Richard Floyd), including:

    a. lists of firearms sellers and related identifying information;

    b. types, amounts, and prices of firearms trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording David Floyd, AKA Richard Floyd schedule or travel;

    e. all financial or bank records, checks, credit card bills, account information, and other financial records utilized to purchase firearms;

    f. all recordings both audio and visual indicating possession, storage, or trafficking (to include exif data associated with visual recordings which can provide evidentiary dates and locations associated with the recordings);

    g. all communications to include but not limited to text or media messages, instant messaging, or messaging applications utilizing the Internet related to firearms trafficking.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, or browsing history;

3. Records evidencing the use of the Internet including:

  a. records of Internet Protocol addresses used;

  b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses associated with firearms trafficking.

  4. Any other fruits or instrumentalities of the crimes of Unlawful possession of a Firearm.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory, SIM, or other media that can store data).